IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK A. BURKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-26 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

      Plaintiff, Mark A. Burkett, (hereinafter "Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*, and § 1381 *et seq*.  Plaintiff filed applications for DIB and SSI on April 12, 2006, alleging disability since April 1, 2001 due to depression, hypertension, panic attacks, and arthritis in his lower back and hips (Administrative Record, hereinafter "AR", 88-90;; 93-96; 100).[1]  His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 60-65; 71-76; 82).  Following a hearing held on March 19, 2008, the ALJ found that the Plaintiff was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 9-18; 25-56).  Plaintiff's request for review by the Appeals Council was denied (AR 1-3), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, the Plaintiff's and Defendant's motions for summary judgment will be denied and the case remanded to the Commissioner.

---

      [1]Plaintiff does not challenge the ALJ's decision with respect to his alleged physical impairments.  Therefore, the Court's discussion will be limited to the evidence relative to the Plaintiff's alleged mental impairments.

I. BACKGROUND

Plaintiff was 40 years old on the date of the ALJ's decision (AR 17). He has a General Equivalency Diploma ("GED") with past work experience as a gas station manager, CNC operator, tamper operator and machine operator (AR 31-36; 101).

Plaintiff was incarcerated for several years stemming from an aggravated assault conviction (AR 159). On March 20, 2002, he was evaluated by A. Newton, M.D., a psychiatrist at SCI-Somerset (AR 161). Plaintiff indicated that he had been on Prozac for the past year which provided some benefit for his depressed mood, but he still felt "down" (AR 162). He admitted to a past history of abusing alcohol and occasional marijuana usage (AR 162). On mental status examination, Dr. Newton reported that his affect was constricted and his mood was sad and depressed (AR 164). Dr. Newton found his memory, insight, judgment, attention and concentration were all intact, but he concluded that the Plaintiff was of "borderline" intelligence (AR 164-165). He was diagnosed with depressive disorder, not otherwise specified and drug and alcohol abuse, and was assigned a Global Assessment of Functioning ("GAF") score of 50 (AR 165).[2] Dr. Newton increased his Prozac dosage amount and recommended he undergo drug/alcohol treatment, as well as stress/anger management treatment (AR 166).

Plaintiff underwent a psychiatric evaluation on June 9, 2002 performed by Pushkalai Pillai, M.D., a psychiatrist at SCI-Somerset (AR 159-160). Plaintiff continued to complain of depression related to his marital problems and incarceration (AR 159-160). On mental status examination, no psychosis was noted, his affect was appropriate to his thought content and he had no suicidal/homicidal thoughts (AR 160). Dr. Pillai reported that the Plaintiff had "very limited" insight and judgment, especially with respect to his alcohol and marijuana usage (AR 160). He was diagnosed with adjustment disorder with depressed mood and dysthymia secondary to marijuana and alcohol dependence (AR 161). He assessed the Plaintiff with a GAF

---

[2]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. It represents "the clinician's judgment of the individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 32 (4th ed. 2000). Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 34.

score of 65, reduced his Paxil dosage and added Trazondone to his medication regimen (AR 160).[3]

Dr. Pillai reported on January 12, 2005 that the Plaintiff was "doing well" on Paxil and Elavil and was "stable without any evidence of acute mental health problem[s]" (AR 157-158). He was diagnosed with dysthymia, alcohol dependence, and marijuana dependence, and Dr. Pillai assigned him a GAF score of 65 (AR 157). He recommended that the Plaintiff undergo mental health follow up for medication, as well as outpatient drug and alcohol treatment with frequent alcohol testing (AR 158).

On December 3, 2005, Anjaneyulu Karumudi, M.D., a psychiatrist at SCI-Somerset, completed a Brief Psychiatric Summary (AR 156). Dr. Karumudi diagnosed the Plaintiff with dysthymic disorder, alcohol dependence and marijuana abuse (AR 156). He reported that the Plaintiff was compliant with his medications (Elavil and Paxil) and was "fairly stable" at that time (AR 156). He assessed him with a GAF score of 60, and recommended that he follow up with a psychiatrist and participate in drug and alcohol treatment after his release on parole (AR 156).[4]

On April 24, 2006, Plaintiff was seen by Donna Anderson, M.D., and complained of, *inter alia*, panic attacks that started while he was in prison (AR 196). Dr. Anderson reported that his affect was normal and appropriate (AR 196). She continued him on Paxil and recommended a mental health referral for his anxiety (AR 196).

Plaintiff sought treatment at the Regional Counseling Center for complaints of depression, anxiety and panic attacks on May 17, 2006 (AR 261). On June 20, 2006, Janis Pastorius, PA-C performed a psychiatric evaluation (AR 262-265). Plaintiff reported a history of mood difficulties, depression, anxiety, irritability, poor sleep and an inability to concentrate (AR

---

[3]Scores between 61 and 70 indicate "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

[4]Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id*.

262). He claimed he was unable to work due to difficulties with people and an inability to handle stress (AR 262). On mental status examination, Ms. Pastorius reported that his mood seemed anxious and she observed a fine tremor in his hands (AR 264). She found no evidence of psychosis and found that his thoughts were logical and well organized (AR 264). Plaintiff was diagnosed primarily with major depressive disorder without psychotic symptoms in partial remission; dysthymia; and panic disorder with agoraphobia (AR 265). He was assessed a GAF score of 45 (AR 265).

  Plaintiff returned to the Regional Counseling Center on July 12, 2006 complaining of increased irritability and panic attacks (AR 260). Treatment notes indicate that he presented as "tense" and "fidgety" (AR 260).

  On July 20, 2006, Robert P. Craig, Ph.D., performed a clinical psychological disability evaluation pursuant to the request of the Commissioner (AR 219-222). Dr. Craig noted that the Plaintiff's concentration, motivation and "self-sufficiency" were all within normal limits (AR 219). Plaintiff reported a history of depression and panic attacks relating to his troubled marriage and incarceration (AR 219). He stated that while incarcerated he took Klonopin, Elavil and Paxil, but did not attend counseling (AR 219-220). On mental status examination, Dr. Craig reported that the Plaintiff presented well with good eye contact, but he appeared to be "rather nervous, jumpy, and fidgety" (AR 220). His impulse control was "fair at best" but he had no suicidal or homicidal thoughts (AR 220). Plaintiff reported feeling anxious "a lot" and depressed "all the time" with an inability to handle stress (AR 220). While Dr. Craig found that he appeared to be "edgy and suspicious", he concluded that he was not delusional or suffering from hallucinations (AR 220).

  Plaintiff was able to answer most of the similarity questions, understood a variety of simple historical facts and sample proverbs, and could perform simple multiplication and division (AR 221). He was well oriented in all spheres (AR 221). Plaintiff reported that his memory was "shot", and Dr. Craig found that his recall for remote, recent past and recent events was "poor" (AR 221). He further found that his general decision making abilities were "poor", especially in regards to more complicated tasks (AR 221). Plaintiff described his daily living skills and social functioning as "fair" (AR 221). He stated that he had difficulty concentrating

and was easily frustrated (AR 221). Dr. Craig diagnosed panic attacks without agoraphobia and rule out panic attacks with agoraphobia (AR 221). He assessed him with a GAF score of 56 (AR 222).

Dr. Craig completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) (AR 223-225). He found that the Plaintiff was able to understand and carry out short, simple or detailed instructions and make simple work-related decisions (AR 224). He found that the Plaintiff was slightly limited in his ability to interact appropriately with the public, supervisors and co-workers and respond appropriately to changes in a routine work setting (AR 224). He concluded that the Plaintiff was moderately restricted in his ability to respond appropriately to work pressures (AR 224). It was his view that the Plaintiff would "benefit from a consistent, predictable work setting-no real problems" (AR 224).

The next day, on July 21, 2006, William J. Fernan, Ph.D., performed a psychological evaluation of the Plaintiff pursuant to the request of the Plaintiff's lawyer (AR 226-231). Dr. Fernan noted that the Plaintiff's hygiene and grooming were good and that he dressed appropriately (AR 226). Plaintiff described having a "good work record" on a "steady basis" and with "good" co-worker and supervisor relations (AR 226). Plaintiff reported that in 1999 he had become significantly depressed with anxiety and panic attacks secondary to chronic, severe pain (AR 227). He indicated that he had been prescribed psychiatric medications and had also participated in individual psychotherapy since 2005 (AR 227). Plaintiff claimed that despite treatment, he experienced "severe depression" with difficulty initiating and enjoying activities (AR 227). Plaintiff further claimed that he was easily irritated, was significantly withdrawn and suffered from anxiety (AR 227). He claimed he suffered from at least one panic attack daily with even minor stress, becoming dizzy and short of breath with an inability to concentrate (AR 227). Plaintiff indicated that he had not abused substances since 1999, was released from incarceration in March 2006 and remained on parole for three years (AR 227). Plaintiff also reported that he had remarried and his relationship with his wife and stepson was "good" (AR 228).

Dr. Fernan reported that the Plaintiff appeared to be "significantly anxious", had a hand tremor and exhibited limited eye contact (AR 228). He found his speech to be spontaneous with no unusual mannerisms (AR 228). He also found the Plaintiff had "moderate difficulty initiating

5

any positive emotions with a significantly blunted affect" (AR 228). Dr. Fernan concluded that the Plaintiff's concentration was "extremely poor" as demonstrated by an inability to perform serial seven subtraction (AR 228). He further found that his recent past memory was also "extremely poor", as was his impulse control (AR 228-229). He also observed "very poor" social judgment secondary to his anxiety and blunted affect (AR 229).

Dr. Fernan administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI") test, but the Plaintiff received a profile pattern of "somewhat questionable validity" (AR 229). His personality pattern indicated that he was immature, impulsive and would have "great difficulty profiting from experience" (AR 229). Dr. Fernan found the Plaintiff to be extremely withdrawn and socially anxious with significant depression (AR 229).

Dr. Fernan diagnosed the Plaintiff with major depressive disorder, single episode, moderate; generalized anxiety disorder; panic disorder with agoraphobia; and personality disorder not otherwise specified (AR 230). He assigned him a GAF score of 50 and concluded that his prognosis was "extremely poor" given the severity and his limited response to treatment of his personal adjustment difficulties (AR 230). Dr. Fernan opined that the Plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions; interact appropriately with the public and co-workers; and respond appropriately to changes in a routine work setting (AR 232). He further concluded that Plaintiff was extremely limited in his ability to interact appropriately with supervisors and respond appropriately to work pressures in a usual work setting (AR 232).

On August 23, 2006, Richard A. Heil, Ph.D., a state agency reviewing psychologist, reviewed the evidence of record and found that Plaintiff was moderately limited in his daily activities, social functioning and in concentration, persistence and pace, and had experienced no episodes of decompensation (AR 248). Dr. Heil completed a Mental Residual Functional Capacity Assessment form and opined that the Plaintiff was "not significantly limited" or only "moderately limited" in all areas of mental work functioning (AR 234-235). Dr. Heil considered Dr. Fernan's report and found his report was an "overestimate" of the Plaintiff's functional restrictions and was inconsistent with the medical and non-medical evidence in the record (AR 236). He found Dr. Craig's opinion "fairly consistent" with the other evidence in the file and

accordingly assigned it great weight and adopted his findings in his own assessment (AR 237). Dr. Heil found that Plaintiff was able to perform simple, routine, repetitive work in a stable environment with the ability to maintain concentration and attention for extended periods of time (AR 236). He concluded that the Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis (AR 237).

Plaintiff returned to the Regional Counseling Center on August 29, 2006 and claimed he had a panic attack the previous day that lasted "all afternoon" (AR 259). He reported lifting weights and exercising in an attempt to alleviate his panic attacks (AR 259). Plaintiff was "fidgety", mildly irritated and resistant to suggestions that he practice his relaxation exercises (AR 259).

When seen on December 15, 2006, Plaintiff complained of dizziness, an inability to concentrate and tremors (AR 258). He claimed he felt angry in social or public situations (AR 258). The examiner reported that he presented as angry with a dysthymic mood, resistant to all authority with poor insight (AR 258). A new treatment plan was developed and the Plaintiff was encouraged to engage in activities that were enjoyable and "treat" himself to things that improved his attitude (AR 258). On December 28, 2006, Plaintiff was seen by Savita Joneja, M.D., his primary care physician, for follow up for complaints of chest pain (AR 269). Plaintiff reported suffering from panic attacks and Dr. Joneja noted that he appeared anxious (AR 269).

On March 15, 2007 Plaintiff presented to the Regional Counseling Center with a depressed, angry mood, generalized paranoia to any legal or authoritarian figures and was physically shaking (AR 257). His primary diagnosis was post traumatic stress disorder; recurrent major depressive disorder; and panic disorder (AR 257). His GAF score at that time was 55 (AR 257).

When seen on July 27, 2007, treatment notes indicated that the Plaintiff was placed in a halfway house for the prior three months as a result of violating his parole by smoking marijuana (AR 332). He complained of "much anxiety" but the evaluator found he was "calm" with some irritability present (AR 332). He was diagnosed with major depressive disorder; dysthymia; generalized anxiety disorder; panic disorder; intermittent explosive disorder; and chemical dependence (AR 332). His medication regimen was adjusted (AR 332).

7

Plaintiff was seen by Anthony M. Ruffa, M.D., an addiction and family medicine specialist, on November 26, 2007 (AR 339; 344). Plaintiff reported a history of depression, anxiety and panic attacks (AR 339). On mental status examination, Dr. Ruffa reported that the Plaintiff was well dressed and exhibited good eye contact. He also observed that the Plaintiff appeared to be "not depressed" at that time and that his insight and judgment were good. He diagnosed the Plaintiff with, *inter alia*, alcohol abuse, depression and bipolar disorder (AR 339).

Dr. Ruffa completed a Pennsylvania Department of Public Welfare Employability Assessment Form on December 21, 2007 and opined that the Plaintiff was "temporarily disabled" from December 21, 2007 to February 28, 2008 primarily due to a herniated disc and secondarily due to "ADD" (AR 337-338).

On March 20, 2008, Dr. Ruffa completed a Medical Source Statement of Ability to do Work-Related Activities (AR 342-343). Dr. Ruffa concluded that the Plaintiff had "extreme" (defined on the form as "no useful ability to function in this area") restrictions in his ability to perform all work related activities, with the exception of his ability to perform activities within a schedule, which Dr. Ruffa rated as "marked" (defined as "ability to function is severely limited but not precluded") (AR 342-343). In reaching these conclusions, Dr. Ruffa considered the Plaintiff's psychological evaluations, multiple psychological tests, and his own observations (AR 343).

Finally, Plaintiff returned to Dr. Ruffa on March 27, 2008, who reported that he had reviewed Dr. Fernan's psychological evaluation and diagnosis of the Plaintiff (AR 346). Dr. Ruffa found the Plaintiff to be well dressed, depressed, with no cognitive thought disorder and no hallucinations or delusions (AR 346). He found that he exhibited good insight and judgment (AR 346). Dr. Ruffa administered the "BDI" (Beck Depression Inventory) and reported that the Plaintiff's anxiety score was "very high", as was his "bipolar" and "ADD" scores (AR 346). Dr. Ruffa opined that the Plaintiff was "unable to work", was "dysfunctional", could not work around other people, was "very short tempered" and was "unable to focus" (AR 346). He diagnosed him with bipolar disorder; severe depression; generalized anxiety disorder; adult attention deficit disorder; and personality disorder (AR 346).

Plaintiff testified at the hearing that he lived alone in a mobile home and estimated that he

drove approximately once a week to the store (AR 30-31). Plaintiff's parents drove him to the hearing, and he testified that he was unable to drive for long distances because he believed he would get lost (AR 31). Plaintiff claimed he was unable to work due to problems with his neck, knees and "mental situation" (AR 36). He testified that he was unable to concentrate or get along with people, and he did not feel safe running certain equipment while medicated (AR 36-37). He claimed he suffered from two to three panic attacks per week, lasting from one hour to all day, that exhausted him to the point that he would need to lie down (AR 45-46).

Plaintiff testified that on the day of the hearing his hands were shaking and he was unable to "think straight" (AR 41). He testified that on a typical day he remained at home and if he needed something he asked his parents to pick it up for him (AR 41). Plaintiff claimed he had not gone fishing for six or seven years because he was unable to concentrate, and no longer enjoyed working on his boat due to frustration (AR 42). Plaintiff stated that he attended Alcoholics Anonymous meetings, attended counseling for his mental health issues and was undergoing treatment with Dr. Ruffa (AR 40-41). He testified that he wanted to undergo more intensive mental health treatment, but was unable to see a doctor until the summer due to a long waiting list (AR 42-43).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who was able to perform medium work, that was simple and routine in nature involving little changes in the work, with no interaction with the public, and only occasional interaction with co-workers and supervisors (AR 51). The vocational expert testified that such an individual could perform the medium jobs as a laundry worker, presser and kitchen helper (AR 51)-52). The vocational expert also testified that such an individual would be capable of performing the light jobs of a sorter, cleaner and marker (AR 52). Such individual would not, however, be able to sustain employment if he could not withstand any work pressures, was absent from the work place four to five days per month unscheduled, required unscheduled off task breaks two to three times per week lasting up to one hour, or was not able to be around a supervisor (AR 52-54).

Following the hearing, the ALJ issued a written decision which found that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security

Act (AR 9-18). His request for an appeal with the Appeals Council was denied and he subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through September 30, 2006 (AR 9). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that the Plaintiff had the following severe impairments: lumbar disc disease, depression, anxiety disorder, and post traumatic stress disorder without agoraphobia, but determined at step three that he did not meet a listing (AR 11-13). The ALJ found that he was able to perform work at the medium exertional level, but was limited to work that was simple and routine in nature, involving little changes in the work, with no public interaction, and only occasional interaction with co-workers and supervisors (AR 13). At the final step, the ALJ concluded that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 17). The ALJ additionally determined that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 14). Again, this determination must be affirmed unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to weigh all relevant and probative evidence which supported the opinion of Dr. Ruffa, his treating physician. Dr. Ruffa opined that the Plaintiff had "extreme" or "marked" limitations in all work related areas and was unable to work (AR 342-343; 346). In according his opinion "little weight," the ALJ relied upon the fact that he was "not a psychiatrist," that his opinions were allegedly unsupported by his mental status examination findings and were otherwise "not consistent with the evidence as a whole" (AR 16).

Plaintiff claims that the ALJ failed to analyze, in any meaningful way, the Regional

11

Counseling Center treatment notes, which he contends supports Dr. Ruffa's opinion. *See* Plaintiff's Brief p. 21. Defendant counters that these records were not ignored, and in fact, were cited to by the ALJ in support of his findings that the Plaintiff's thoughts were logical and well organized, and he had no symptoms of psychosis. *See* Defendant's Brief p. 14. The record does reveal, however, that the ALJ failed to address certain material findings in the Regional Counseling Center records. For example, the records reflect that the Plaintiff consistently complained of depression, anxiety and irritability, and the treatment notes document that on several occasions the Plaintiff presented as anxious, tense and/or fidgety (AR 259-260; 264). In addition, on December 15, 2006, the examiner reported that the Plaintiff presented as angry with a dysthymic mood, and was "resistant to all authority with poor insight" (AR 258). On March 15, 2007, it was reported that the Plaintiff was depressed, angry, exhibited "generalized paranoia to any legal or authoritarian figures" and was "physically shaking" (AR 257).

It is now well established law in this Circuit that, in ruling on a disability claim, the Commissioner "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3rd Cir. 1983). Without such explanations, the court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). All of the findings set forth above are listed as examples of psychiatric signs in the Commissioner's regulations, *see* 20 C.F.R. §§ 404.1528(b); 416.928(b), and therefore, could constitute objective evidence supporting Dr. Ruffa's assessment. Consequently, it was error for the ALJ to ignore this evidence and the case shall be remanded for consideration of this evidence.

Plaintiff further claims that remand is appropriate based upon the ALJ's failure to have considered all of the GAF score evidence. *See* Plaintiff's Brief p. 21. As this Court recently stated in *Rhodes v. Astrue*, 2009 WL 3287011 (W.D.Pa. 2009) and *Rivera v. Astrue*, 2009 WL 1065920 (W.D.Pa. 2009):

> Pursuant to the final rules of the Social Security Administration, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." *See* 66 *Fed.Reg*. 50746, 50764-65 (2000). Nonetheless, the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." *Id.* As such, "it constitutes medical evidence accepted and relied upon by a medical source and *must* be addressed by an ALJ in making a determination regarding a claimant's disability." *Watson v. Astrue*, 2009 WL 678717 at *5 (E.D.Pa. 2009) (emphasis in original), *citing Colon v. Barnhart*, 424 F. Supp. 2d 805, 812 (E.D.Pa. 2006); *see also Santiago-Rivera v. Barnhart*, 2006 WL 2794189 at *9 (E.D.Pa. 2006) (case remanded since claimant's GAF score of 50 indicated serious symptoms and ALJ failed to discuss score); *Span v. Barnhart,* 2004 WL 1535768 at *7 (E.D.Pa. 2004) (absent from ALJ's discussion was any meaningful indication of how he considered claimant's GAF scores or discounted their significance); *Escardille v. Barnhart,* 2003 WL 21499999 at *7 (E.D.Pa. 2003) (case remanded because ALJ failed to mention claimant's GAF score of 50 which constituted a specific medical finding that claimant unable to perform competitive work).
>
> Because the ALJ is required to give some reason for discounting the evidence he rejects, *see Adorno v. Shalala,* 40 F.3d 43, 48 (3rd Cir. 1994), and the ALJ's decision here fails to address the GAF score evidence, I am unable to conclude that his decision is supported by substantial evidence. The case shall be remanded to the Commissioner who is directed to specifically discuss this evidence on remand.

*Rhodes*, 2009 WL 3287011 at *6; *Rivera*, 2009 WL 1065920 at *8.

The same result is dictated here. The ALJ's decision reveals that the only GAF score discussed by the ALJ were the scores assessed by the prison psychiatrists for the time period from June 9, 2002 through December 3, 2005 (AR 15-16; 156-157; 160). The ALJ found that these records showed that the Plaintiff's GAF score was "consistently assessed at 60 to 65," and the ALJ relied upon these scores in supporting his residual functional capacity assessment (AR 15-16).[5] The ALJ failed, however, to discuss the Plaintiff's GAF score of 45 assessed by Ms.

---

[5] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3rd Cir. 2000), quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). An ALJ must consider all relevant evidence when determining an

13

Pastorius on May 17, 2006 (AR 265), or the GAF score of 50 assessed by Dr. Fernan on July 21, 2006 (AR 23). These GAF scores, per the *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000), could support a finding of a serious impairment in social or occupational functioning. The ALJ is therefore directed to specifically address this evidence on remand.

Plaintiff further challenges the ALJ's evaluation of Dr. Fernan's report. Dr. Fernan was a consultative examiner who concluded that the Plaintiff was "markedly" limited in his ability to understand, remember and carry out detailed instructions; interact appropriately with the public and co-workers; and appropriately respond to changes in a routine work setting (AR 232). He also found the Plaintiff to be "extremely" limited in his ability to interact appropriately with supervisors and respond appropriately to work pressures in a usual work setting (AR 232). The ALJ assigned Dr. Fernan's opinion "little weight" because, in his view, it was "not supported by mental status examination findings" and was "not consistent with the record as a whole" (AR 16). Plaintiff argues that the ALJ selectively reviewed Dr. Fernan's report and/or ignored certain findings set forth therein. *See* Plaintiff's Brief p. 23.

The ALJ noted that Dr. Fernan's mental status examination findings revealed that the Plaintiff was not psychotic or suicidal and had a "good recent memory".(AR 16). While the ALJ credits this evidence as indicative of the Plaintiff's ability to function, he failed to address other findings by Dr. Fernan that are material to the issue of disability. In addition to the findings enumerated by the ALJ, Dr. Fernan found that the Plaintiff was "significantly anxious," had limited eye contact and visibly trembling hands (AR 228). He found his affect to be "significantly blunted" with "extremely poor" concentration, memory, impulse control and test judgment (AR 228-229). He characterized the Plaintiff as "extremely withdrawn" and "significant[ly] depress[ed]" (AR 229). While the ALJ is not required to mention every finding

---

individual's residual functional capacity. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *Burnett,* 220 F.3d at 121.

in every treatment note, *see Fargnoli v. Massanari*, 247 F.3d 34, 42 (3rd Cir. 2001), this evidence was sufficiently probative to warrant a discussion by the ALJ.

Given the previously described deficiencies in the ALJ's decision, the case will be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.

### IV. CONCLUSION

In light of the above discussion, Plaintiff's and Defendant's motions for summary judgment will be denied and the case remanded to the Commissioner for further proceedings consistent with this Opinion. .

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK A. BURKETT, | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No. 09-26 Erie |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **ORDER**

AND NOW, this 25th day of February, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is hereby directed to mark the case closed.


                                                      s/ Sean J. McLaughlin
                                                      United States District Judge

cm: All parties of record.